Our last case this morning is number 23-2254, Merck Sharp & Dohme B.V. v. Aurobindo Pharma USA. Okay, Mr. Werlinger. Good morning and may it please the Court. Congress limits patent term extensions to a period of time beginning after the date the patent is issued, not the date of application, not the priority date, not some effective date, the issue date of the patent for which PTE is sought. Everyone agrees that the patent is the 733 patent and we all agree that it issued on January 28, 2014. The issue here, to put it directly, is does Section 156C mean what it says? Why is it that Congress conceivably would want to treat the extension question differently depending on whether the same claim appears in the original application or a situation in which the same claim is continued as a result of a reissue? So I think when we're looking at Section 156C, it doesn't differentiate claim to claim. That's 252 and I'm happy to go there in a moment. No, no, but why is it that under 156 that Congress would want to have different results in those two situations? It's sort of counterintuitive. So I think what Congress is looking to do with 156C is to set a single bright line regimen that is applicable to all patents. It was looking for something that was very easy for folks to understand, for the PTO to administer, and it didn't want to get into claim by claim distinctions. And I think that's what it has accomplished with Section 156C by pegging it to the issue date of the patent for which PTE is sought. How does your patent term extension by seeking a reissue and the same claim survive? There are ways. So this is Merck's point. It's a policy point and I have two responses. The first is that if the text is plain, that's it. There might be policy reasons why the statute might have been written differently, but that is for Congress to determine. Specifically to the issue of losing the patent term, there are multiple ways that Merck could have avoided this outcome. The first thing they could have done was they could have sought reissue earlier. They waited a number of years before seeking the reissue of this patent despite knowing full and well that they did not have the species claim that they are asserting today. The other thing they could have done was to wait for the approval process of the drug to play out. They could have sought their patent term extension and then they could have sought the reissue. Well, I understand that, but that's not really responsive to the question of why Congress would want two different outcomes, one when there's been no reissue and when there has been a reissue. So I don't think it's necessarily that they wanted two different outcomes. I don't think that was an issue where they are expressing a policy here. I think what they wanted through 156C was to set a single regime that would allow for all patents to go through the PTP process without distinction. Okay.  And if I may, again, the principle canon we have to apply here is that if the text is plain, that's what we apply and that is it. It's a dangerous position for us lawyers to be sitting here and arguing about policy. That one belongs to Congress. And here, Section 156 is plain on its face. Well, if you look at 156A, where it refers to the term of the patent, it could be referring to the term of the original patent. And given the reference later in that same subsection to the original expiration date of the patent, maybe that's a reference to the original patent. So speaking of the term, well, first of all, I would answer my suggestion that maybe when Congress used the phrase the term of the patent in 156A, they were referring to the term of the original patent. So the word original is used throughout 156, and I think that is in reference to the term before PTE is applied. So that's not necessarily making a distinction between original and reissued patents. There is no such distinction that is drawn in 156, and I think that's on purpose. Congress was aware of the peculiarities of reissued patents for over 150 years before they promulgated Section 156 as part of the Hatch-Waxman Act. But you would lose if that were the right construction, if in 156A, the term of the patent referred to the original patent, right? I don't think that's necessarily true, Your Honor. I think the question is, well, when we're referring to the term, that's referring to what is being extended. The question here is, when do we start counting? And if I may, I think this goes to Merck's argument of the term of the reissue importing in the issue date of the original patent. And I have three responses to that argument. The first is that, so this is speaking of Section 251. That's not what Section 251 says. What Section 251 says is that a reissued patent takes the unexpired part of the term of the original. It just takes a piece of it, not the full thing. If Congress intended reissued patents to take the full term from beginning to end of the original patent, they could have just said term, or they could have picked some other language without a qualifier, but they didn't. Second, Section 251c incorporates Sections 151 through 154 into the reissued regime. And 154 sets the beginning date of all patents, the terms of all patents at issuance. And third, the issuance of a reissued patent is a legally distinct and meaningful moment, and we know that by looking at the first sentence of Section 252, which says that the issue date of the reissued patent is that the surrender of the original patent takes effect on the issue date of the reissue. That is the point where the original patent is canceled in law and ceases to exist, and the reissued patent rises up in its place. So it has to have that distinct issue date. If there's no questions on 251, I'd like to turn to 252, and I think this is where Merck and the PTO spend the majority of their time. This Court has twice before confronted this provision in Seattle Box and Fresenius, and it has made clear that Section 252 operates narrowly. It preserves litigation claims that would otherwise be defeated or die due to the mechanics of canceling out the original patent and issuing the reissued patent. PTE is not granted in litigation. Section 252 does not operate, does not alter the operation. 251 and 252 were enacted long before 156, right? That is correct. So why would we look there to figure out what's meant by 156? Why isn't it just better to look at 156 and interpret it? So I think you do look at these provisions, but when we look at Section 156, we have to consider is that Congress was aware of these provisions. It was aware of how reissued patents operate. So if it wanted to create a special PTE regime for reissued patents, it would have done so explicitly. Repeatedly, throughout the history of our patent laws, when Congress has wanted to alter the operation of reissued patents vis-a-vis original patents, it has passed explicit text to do so. And it has not done anything to alter the operation of Section 156. It has not promulgated an alternative interpretation of the word issued as applied to reissued patents. And we have to view that silence as purposeful. Now Merck does not directly, I don't think they directly dispute anything I just said. But they say that because we're in litigation, we have to ignore it. And that, the problem that I have with that is that reading Section 252 in that manner would violate multiple candidates of construction, at least three by my count. The first is that the argument, the point of their argument is that they're asking you to infer an alternative meaning of the word issue, which is the operative word in Section 156C. And if you were to do that, if you read Section 252 to do that, you're violating the candidate of construction that words are supposed to have a single meaning throughout the statute because you're creating this alternative definition through 252. Your second, you're creating an idiosyncratic interpretation of a word that's already appearing in the statute. And when Congress intends to do that, they do so explicitly. That has not been done here. And the third canon is the one we were just talking about, Judge Dyke, which is Congress is presumed to write the law with full knowledge of preexisting law. Reissued patents have been around for a long time. 251 and 252 were there when 156 was written. So if Congress wanted to alter the operation of Section 156 as applied to reissued patents, they would have passed an explicit regime. But they didn't do so. By keeping Section 252 moored to the historic meaning that has been recognized by this court multiple times, you avoid these construction problems while still giving meaning to the statute. So if there's no question on 252. What's your response to the argument that your position leads to absurd results or could lead to absurd results? Sure. So this is Merck and, to an extent, the district court walking through hypotheticals where a matter of days might make the difference between getting five years of PTE or no PTE at all. And that might be the way that the bright line of this statute works. But that does not mean that it's absurd. Anytime you draw a bright line, there are different things that you can do, different circumstances that might put you on one side of the line or the other. That does not mean that we deviate from the otherwise plain text of the statute. The court confronted a situation very similar to this in YFE-CAPOS, where it walked through a very similar exercise. But obviously, the statute is not plain in this case, is it? Well, I disagree with that, Judge Rayner. I think 156C is plain. And neither Merck nor the PTO identify a facial ambiguity on the text of the statute. To be sure, they try to use 251 and 252 to ambiguate the text. But number one, we shouldn't be ambiguating plain text based off of a statute that- If you take the text that says the patent, that's easily construed to mean the original patent. I beg your pardon, could you repeat that, Your Honor? 156A says the term of a patent. If the reference there is to the original patent, the provision is clear, and we don't have to look to 251 or 252. So if I may, Your Honor, is there a sub-provision of 156A that you're looking at to make sure- It says the term of a patent which claims a product. Correct. Right? Right. The term of the patent. Shall be extended. Correct. So if the reference is to the term of a patent, meaning the original patent, then Merck is correct about it. I'm glad I asked that, Your Honor, because- And then C says the term of a patent. It's the same reference to the same patent, if that means the term of the original patent eligible for extension. So I now, and I apologize for not getting it earlier, but I now understand your question, Your Honor. And I want to point you, patent is a defined term in the statute. I want to point you to section 156F6 that says the patent, the term patent means a patent issued by the United States Patent Office. It's not necessarily saying original patent, issued patent. It's just saying a patent. And if we go back to section- I don't think the definition is inconsistent with the construction I'm suggesting. Well, if I may, Your Honor, section, let's come back to section 156. And interpreting it that way avoids a situation where somebody tries to get a patent term extension for some new patent in a reissued patent. By defining it in that manner? A new claim in a reissued patent. Well, I'm not entirely certain I agree with that one, Your Honor, and I want to come back to section 156C itself because I think the context here is important. It says the term of a patent eligible for extension. So we all agree, all sides agree that the patent eligible for extension is the 733 patent. At the time Merck applied for PTE, the original patent was already dead and canceled out from law. So that term, the phrase, the term of a patent eligible for extension cannot refer to the original patent because under that circumstance, that patent doesn't exist anymore. And I think you were hitting at one of the major problems with Merck's interpretation by referencing the potential of a broadening reissue where the original patent does not cover the product, but the broadening reissue does. That would be creating a problem in section 156 because the patents are only eligible for PTE if they claim the product. So to be using the issue date of an original patent that didn't even claim the product and using that as the marker for starting patent term extension. But you couldn't do that because if the claim is canceled and reissued, it's nunk-pro-tunk. It doesn't exist. Well, I'm not suggesting that the claim was canceled. I'm suggesting a broadening reissue where the original patent said nothing about the  It didn't claim it. And then you are allowed within two years of that point to seek a broadening reissue. And it is possible, and even Merck and the PTO concede this, it is possible to have a broadening reissue that claims a product that was not claimed in the original. Yeah, and you shouldn't get an extension for that. I agree with that, but under Merck's interpretation, you would. And that's a problem. I see that I am into my rebuttal time. I am happy to keep talking and answer any questions, but I did want to flag that for the bench. OK. I'll answer when I'm ready. I'll answer when I'm ready for my time. Thank you. Mr. Krinsky? Thank you, Your Honor. May it please the Court. I'd like to start, Your Honors, with the accusation that we are somehow avoiding the statutory text and making an argument based on policy. I think, Judge Dyke, you had it exactly right that the language of 156 is very helpful to us here. The defendant's argument assumes the conclusion that 156, when it refers to the date of the patent issued, must be referring to the reissued patent as a separate, brand-new entity and referring to the date that the reissue occurred as the date. But that's not the best reading of the statute, and it's certainly not the best reading of the statute when, as this Court is required to do, it looks at the broader statutory scheme, including sections 251 and 252, which dictate the operation of reissues and the relationship between an original patent and the reissuance of that patent, which, for some purposes, the reissue steps into the shoes of the original, and for other purposes, there are differences set forth in 251 and 252. So then why should we interpret 156C, the language, the term of a patent, that the original patent, your opponent says that that patent no longer exists, that it's dead? So the original patent's claims are dead. That's what the case law at Seattle Box actually says. The patent, in a sense, is the same patent reissued in this case and in every other case where this issue has been presented. The patent, the original patent, claimed the drug, and the reissued patent also claimed the drug, in this case with claims that are identical throughout and under both section 251 and 252. But it doesn't say patent claims. It says patent. Right. And to Judge Dyke's point, the patent ought to be construed to be the original patent. And if there's any doubt about that, look to section 251. Section 251 doesn't refer to two different patents. It refers to reissuing a patent. It is the same patent, as this court explained in the Intel case. It doesn't refer to the issuance of a reissue patent for an invention. It specifically refers to the reissue of the inoperative or invalid patent for the invention disclosed in the original patent. In other words, Congress, when it referred to the patent in section 156, was referring to, in the case of reissues, one and the same patent with one and the same term. It is not, unlike a divisional or a continuation or a wholly new patent on a different invention, it is the same patent that has been reissued with errors corrected. And to Judge Dyke's point about the operation of the statute, where the drug is claimed originally and continues to be claimed in the reissued version of the patent, the best and, I'd argue, only reading of section 156 A and C is that the patent refers to the one patent that's been here all along, and the date the patent issued is the original issue date. And that's the only reading that gives a sensible result in the Hatch-Waxman Act, where a patentee gets credit for the period of time where they had a patent in effect, but they effectively couldn't make use of that patent because the FDA was still reviewing their drug, and that was the case here. You know, Merck's Sigamodex drug was under FDA review for longer than the maximum five years of credit. After this court decided the Enre Tanaka case, Merck promptly sought a reissue, you know, having been clarified that they could get narrower claims directed solely to this compound. But all along, they had claim four, which covered this compound expressly. And the fact that the reissue predated the FDA approval in the PTE application should not make a difference in terms of whether Merck gets full or only partial credit for that period of overlap between the patent's term, the period after the date the patent issued, and the regulatory review period. Sections 251 and 252 both confirm this result. Section 251, as I mentioned, refers to a single patent and a single invention. It also refers to a single term, which this court has always treated consistently across statutes, as it must. The Yamazaki case emphasized that fact. And the term is defined based on the date the original patent issued. Today, that goes to a date that is 20 years after the filing date of the patent. But at the time Section 156 was enacted, that term ran through 17 years after the date the patent issued. That term remains the same upon reissuance. It inherited that same period of time. It didn't get an additional new 17 years as though it were a brand new patent. And so the logical inference is that when Congress enacted Section 156, it intended to refer to extending that one and only term. Likewise, Section 252, as a district court properly recognized, explains how reissued patents should be treated in litigation. And the first clause is that this isn't litigation. This is litigation. Well, not the kind of litigation they were referring to. They were talking about infringement litigation. Well, but Your Honor, I think this is an important point. Because this is an infringement litigation. And Section 252 provides for intervening rights when an act of infringement occurs prior to the reissuance of a patent. But that's not the act of infringement here. The abbreviated new drug applications that give rise to this cause of action and the filing of this complaint all occurred after the reissue. And Section 252, therefore, compels that the claims be treated as though they had been present all along. That's the language of Section 252. And were there any doubt on that, the continuous effect clause at the end of 252 applies that rule where there are substantially identical claims all along. And that, again, is this case here. I mean, I think Your Honor rightly expressed some concern with the situation where a broadening reissue, for the first time, the reissued patent covers the drug when it didn't cover the drug before that. Merck's position does not require that a patentee in that situation be given credit for that. That's not the facts of this case here. And it's not the facts of any case of the 40 cases that we and the director have been able to identify where there have been a PTE in an application where there was a reissued patent. In none of those cases did this broadening reissue scenario occur. So I don't know that the court needs to decide the broadening reissue situation. I do think that the answer to that scenario probably lies in Section 156A. Because in 156A, you would not necessarily have a patent covering the drug for the entire period of regulatory review. But again, that's not the situation we have here. But we sort of have to come up with an interpretation that would make sense in other situations. I mean, I don't think we can view this with blinders on to the consequences of what we might be doing. And if the court wishes to decide it, that would compel affirmance either way. I mean, Section 156A and C, as your honor recognized in questions to my friend on the other side, can and should be read to refer to the original patent. And in a situation where there's a broadening reissue and the original patent doesn't claim the drug, at that point there wouldn't be that period of overlap. But we don't have a problem with that. I mean, that would lead to an affirmance here. The continuous effect clause of Section 252, I think, also reinforces that. I mean, if your honor is troubled by the notion that the PTE should be governed by a litigation statute, the final clause of 252 provides that where there is a substantially identical claim, as there is here, it shall be given continuous effect to the extent its claims are substantially identical with the original patent. It shall constitute a continuation thereof and have effect continuously from the date of the original patent. So whereas here, you have a claim that survives reissuance. The error correction doesn't make a substantial change to that claim. Both the patent office, when calculating PTE, and courts, when subsequently handling litigation thereafter, everyone consistently treats that as though it had been issued in the first place. The fact that a patentee has gone to procure a reissue, availed itself of that mechanism that Congress created, doesn't change any of their statutory rights with respect to those claims that they have before and after the reissue. I think the policy point, too, does reinforce this. Merck, I think it's important to recognize, did not engage in any timing gamesmanship here at all. It simply obtained a reissue promptly after Inrei Tanaka clarified that it could get more specific claims. But there was a suggestion that, well, maybe we should have sought reissue earlier. Tanaka hadn't been decided yet. There was a suggestion that perhaps we should engage in some kind of gamesmanship and save our reissue application. But at the time Merck sought reissue, nobody knew how long the FDA was going to take to review the drug. Nobody knew if the drug was even ever going to be approved. So Merck did the natural thing and, in the ordinary course, sought reissue as it was entitled to. And I submit it doesn't make any sense to read Section 156. And I don't think Congress intended for Section 156 to lead to a result where, if the reissue happens to occur prior to the conclusion of the regulatory review, the amount of compensation the patentee gets for that overlap is curtailed. But if the reissue just happens a little later, they get the full five years. I mean, neither the date the patent office concludes a reissue proceeding nor the end of the FDA's regulatory review period are within the patentee's control. And there's no conceivable reason why the relative ordering of those two dates should lead to a different result. That, I think, distinguishes it from the cases that my friend on the other side highlighted, where sometimes, if you miss a deadline, there are adverse consequences. Days can matter at times in the law. That's true. But here, Congress enacted Section 156, essentially, as a remedial statute to award patentees compensation for the time the FDA takes in a protracted regulatory review, give them more terms, specifically with respect to the drug or indication at issue. And that compensation should not depend, and I would submit does not depend, if the statute's properly read, on the timing of a reissue or the fact of a reissue. It's the same patent all along. And I guess the one last clarifying point I'd make, if there are no other questions, is just this notion that we heard a lot of in the argument, and I think even more of in the briefs, that this court needs to treat a reissued patent as a separate patent. And that Section 156 needs to refer to a different patent, because the patent is dead. But the dead case law comes from Seattle Box. And Seattle Box went on to articulate the same identicality rule that I was highlighting in Section 152. After saying, quote, the original claims are dead, Seattle Box went on to say, the statute permits that the claims of the reissued patent to reach back to the date the original patent issued, but only if those claims are identical with claims in the original patent. And in that case, which is presented here, the reissue shouldn't affect the calculation of patent term, and it should reach back. And for that reason, if the court has no other questions, I'll just say, the consistent practice of the PTO, the PTO's position, you're going to hear from them momentarily, the PTO's codification of its practice in the MPEP, and the district court's very well-reasoned decision all point in the same direction, which is how the statute should be read. The date the patent issued is the original issue date. OK. Thank you. Ms. Clay? Your Honors, and may it please the Court. The phrase, the issue date in 156 for PTE is best interpreted in view of the Patent Act as a whole. And for a reissue date, that's in view of sections 251 and 252, and means the date the original patent was issued. This interpretation aligns the language of 156 with the statutory provisions governing the very patent that we're talking about, which is a reissue. With respect to 252 in particular, that demonstrates, and the language makes clear, that a reissue has the same effect as if originally granted in amended form. I'm not sure. I think 252 is dealing with infringement invalidity questions. It's not obviously dealing with patent term extensions or anything like that, because those didn't exist when it was written. So with respect to the term, the trial of action in there, I think it's counterintuitive to say that you're not going to give the reissue the same effect in an administrative proceeding that directly impacts a litigation and infringement action, which all depends on determining the expiration date of the patent. And this court in the Cooper case did look to 252 to decide, how do we interpret language that governs reexaminations, which is an administrative proceeding? So the effect does impact trials of actions. You need to know what the expiration date is of a patent when it's in litigation. So it would not make sense to have PTE depend on the forum there. In addition, turning to 251, that also impacts the term of the patent. And as your honors have recognized, 251 tells you that a reissue patent has the unexpired term of the original patent. So that unexpired term is based on the original patent's issue date. That's the date it starts. Pre-URAA, it was also entirely based on the issue date. That's how much term you got. And then PTE, the PTE statute itself tells you, I'm going to put that PTE into the original patent. So everything is tied to the original patent. It would simply not make sense to say, although I'm putting this extension into the original patent, I'm going to base it on a different date, a reissue patent date. So using the original patent's date aligns all of the dates that what you're using to determine the expiration date of the patent for a reissue patent. With respect to the absurd results that your honors talked about earlier, I think one of the important things to realize or the absurd result that the PTO finds most persuasive is the fact that more FDA delay here leads to less PTE. And that simply does not align with the policy behind PTE, which is to compensate for agency delay. So it's just nonsensical to say, the longer the agency delayed, the less PTE I get. If Merck had filed on only the original patent and then waited till after FDA approval to file for the reissue, there is no dispute they would have gotten the full amount of PTE. And so aligning all of those things together, the statutory context, the policy, and as I'll mention briefly, USPTO practice, they all go towards the best reading, which is using the original issue date, not the reissue issue date. Am I correct that this situation doesn't arise very often? That's correct, your honor. In fact, it's relatively rare, correct? That is very correct, your honor. So since USPTO records that I looked back to patent 3 million for PTEs, there's only been around 40 to 50 that have even addressed PTE on a reissue. And the resolution of those cases favored finding that the issue date is the original issue date? Yes, your honor. So the USPTO has been consistent with a reissue PTE application in using the date of the original patent for calculation of that PTE. What happens if the original patent has a claim which is canceled and reissued, and that's the claim that covers the product? I mean, obviously, if the claim is canceled, you wouldn't think that you'd get the patent term extension. And yet the statute provides for an extension not on a claim by claim basis, but for the patent as a whole. So what's the result under those circumstances, where you have a claim in the original patent which covers a product whose approval is delayed, but that claim is canceled in the reissue? So if that was the only claim covering the approved product, the other parts of the PTE statute say you can't get PTE on that patent, because you do not have a claim covering the approved product. So one of the requirements of PTE. Wait, what provision says that? So that you have to have, so let me look. So it's the term of a patent which claims a product that has been subject to a regulatory review period. So if you read section A. So if we're talking about that being the term of the original patent, but the claim gets canceled and reissued, somehow the construction of the language has to take account of that situation and not presumably give a patent term extension when there was no claim in the reissue that covered the product. So I'm interpreting. Do you agree? I agree that you cannot get a PTE extension on a patent that does not cover the approved product. So after the reissue. I guess it depends on the timing. So if you had PTE on the original patent and you filed a reissue, that would, under the terms of 251, that reissue would get the unexpired term of the original patent. OK, but we're talking about a situation in which the patent term extension comes up after the reissue occurs. And the reissue cancels the claim that covers the product. Do you agree that under those circumstances there should be no PTE? My understanding is that that would be denied because the reissue patent does not cover the approved product, correct? So you could not get PTE. How do we get there under the language of the statute? So my understanding, so 156A, I admit I read that differently than I believe your honor is. I'm reading the term of a patent in 156A, in this case, in this scenario, to refer to the reissue patent. The term that the reissue patent has, and you know that because you have to look 156A just like you look at 156C in terms of what the reissue patent says. So you need the context. But if you read that as referring to the reissue patent, then you could get patent term extension for a new claim that's in the reissue. Yes, your honor. And same thing would happen if you had an original claim, original patent that got PTE, and then you got reissue that had a new claim. There's no dispute in this case. That term would transfer to the reissue. So a new claim in a reissue would get the same PTE that it had in the original. Well, and it could be the source of the PTE, is what you're saying. So I think that's a different question with respect to broadening reissue, if that's what your honor is talking about, if you file, if this case happens where the broadening reissue, or excuse me, the reissue patent has the claim for the first time covering the approved product. So in that case, the USPTO has not set forth because we have simply never seen that happen. It is a theoretical and, I would admit, highly unlikely scenario, given that I don't know there's a lot of pharma companies that have just one patent on a product going over FDA approval, and it doesn't happen to cover the approved product. So this theoretical, unlikely possibility, we have not said we would treat it differently. And that's because we haven't been presented with arguments about, under the statute, why it should be treated differently. So what the PTO has said, and that's in the new NPP provision that they said in 2022, which is, when you have a patent that has the same claims that cover the product between the original and the reissue, we're going to use the original date. And that's simply reflecting the situations that the PTO sees. We do not see, and never have seen, a broadening reissue covering an approved product for the first time. And I would submit that the theoretical and unlikely possibility should not derail the statutory construction that is guided by 252 and 251, as well as policy, and as well as the consistent, longstanding US PTO practice, which we believe is informative, to your honors, as you obtain the best reading of this. I'm concerned about, in the area of gamesmanship or shenanigans, to what extent would there be a greater opportunity to game the system if we find the date to be the reissue date, not the original date? So I believe, just my self-thinking of gamesmanship that could occur, it would be not seeking a reissue quickly, and not, I guess, that would take away from the public the knowledge of the correction, and the error, and the patent. What you would do instead would be wait until you have the PTE on the original patent, and then you would file your reissue, knowing that under the statute, and it's undisputed, that that PTE would then transfer over the reissue. So it would be gamesmanship in either not filing the reissue, or at the patent office taking certain steps to delay your reissue application until you get PTE on the original patent. On the contrary, there is no gamesmanship that would be under the interpretation using the original patent. And that goes back to the idea that there was no reason that you would want to file a reissue if you knew it would cut off PTE. OK, I think we're out of time. Thank you. Thank you, Your Honors. Mr. Werlinger. So Judge Dyke, Judge Reyna, you all asked a lot of pointed questions about some inconsistencies and things that might occur with the PTO and Merck's position. Y'all know that those two positions are not identical, and I'll get to that in a moment. The best way to avoid those issues is to apply the text as Congress wrote it. I want to respond to the comment that we are assuming a definition of issue. We're not. It is an undefined term in the statute, and under the law, undefined terms presumptively carry their ordinary meaning. That's the one you find in the dictionary. Merck and the PTO have not argued otherwise. I think my friend from representing Merck also mentioned several times that reissued patents and the original patents are the same patent. They're just one and the same. And that, too, is wrong as a matter of law. This court said as much in Seattle Box, and the Supreme Court has said it multiple times in cases going back nearly 200 years. I also want to point out in this respect that Merck amended its complaint to specifically plead the reissued patent, meaning it is a different bundle of rights. And they updated their Orange Book listing to reflect the fact that we have this new patent out there. Well, what they might think really doesn't bear on the statutory construction, right? On the statutory construction of what? 156. But, well, again, but it does, because what they're trying to say is that it's the same patent. It's the same patent term. It takes the issue date. This is kind of their oblique way of getting a separate definition of the word issued, because they cannot give you a plain text interpretation of that word directly. And what I'm saying is that's wrong. That's the problem. It is a different patent. It is a different term. The term takes qualities of the original patent's term as defined in Section 251. But as I noted during my presentation, it just takes the piece. It just takes that back half. Reissued patents must have a distinct issue date. Otherwise, the reference to the incorporation of Section 154 doesn't make sense. The first sentence of Section 252 doesn't make sense. And again, that's what Congress wanted. They could have picked a different language, but they didn't. You assume that anybody was thinking about this problem, which is probably unlikely. Well, perhaps so. But we make that assumption in law, Judge Dyke. We assume that Congress is aware of these issues when it promulgated 156. And specifically on Sections 251 and 252, Congress has amended the law multiple times over the years to address issues of concern. What I want to point out is that they created the definition of an effective application date under 100 I-2. That specifically backdates the application of the reissue to that of the original. If they wanted to do something like that for an issue date, they certainly knew how to, but they haven't. Regarding the PTO's practice, I do want to point out the disconnect between the two. Merck is saying issue refers to the issue date of the original patent. We're talking about issue full stop, no limiting principle. I think you asked a couple of questions, my friend, of how we stop the problems with broadening reissued. And he effectively punted. He did not give you a limiting principle. What the PTO is proposing through Section 2766 is that we only do this if the original and the reissue both cover the product. That might be a little bit more of a sensible policy, but it is even further unmoored from the text. And that is the problem with it. I also want to note very quickly on deference that for a number of reasons, we do not think skid more deference is appropriate here. Number one, we think you can resolve this case with the application of canons of construction, which means you don't get to skid more. Number two, the PTO has not articulated a coherent interpretation of 156. They didn't even take a position on this until they promulgated MPEP 2766 during the pendency of this litigation. And even at that, there's still no articulation of how the statute supports that interpretation. We really didn't get that until they filed their amicus brief in this case. And for the reasons that we have laid out in our reply brief, that position is wrong. If there are no further questions, I think I'm about out of time. OK, thank you. All right, thank you, Mr. Chairman. Medical counsel cases submitted. That concludes our session for this morning.